IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02025-WYD-CBS

MICHAEL KEITH TIVIS,
     Plaintiff,
v.

DR. PATTY BEECROFT, M.D.,
MR. RON LEYBA, (Warden), and
MR. JOE ORTIZ, (Executive Director),
     Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

     This civil action comes before the court on Defendants' Motion to Dismiss (filed January 18, 2007) (doc. # 15). Pursuant to the Order of Reference dated November 13, 2006 (doc. # 10) and the memorandum dated January 18, 2007 (doc. # 16), the Motion was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Tivis' "Reply to Defendants' Motion to Dismiss" ("Response") (filed April 27, 2007) (doc. # 32), Mr. Tivis' "Objection to the Court[']s Decision to Treat Defendant's Motion to Dismiss as a Motion for Summary Judgment under Fed. R. Civ. P. 56" (filed May 15, 2007) (doc. # 37), Defendants' "Reply Brief in Support of Motion to Dismiss" (filed May 29, 2007) (doc. # 38), the pleadings, the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.     Statement of the Case

     Mr. Tivis is currently an inmate at the Arkansas Valley Correctional Facility ("AVCF") in Crowley, Colorado. Proceeding *pro se*, Mr. Tivis filed this civil action pursuant to Title 42 U.S.C. § 1983. In Claim One, Mr. Tivis alleges that he suffers from degenerative joint disease and that for six years the Defendants have been deliberately

1

indifferent to his serious medical needs in violation of his Eighth Amendment rights by failing to provide him necessary pain medication and hip replacement surgery. (*See* Complaint (doc. # 3) at p. 6 of 23). In Claim Two, Mr. Tivis alleges that Defendants have violated his rights to due process and equal protection under the Fourteenth Amendment by failing to provide him necessary pain medication and hip replacement surgery. (*See* Complaint (doc. # 3) at p. 13 of 23). As relief, Mr. Tivis seeks compensatory and punitive damages. (*See* Complaint (doc. # 3) at p. 22 of 23).

Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for several reasons: (1) failure to allege personal participation by Defendants Leyba and Laurance; (2) Defendants are entitled to sovereign immunity to the extent that Defendants are sued in their official capacity; (3) Mr. Tivis' Fourteenth Amendment claim fails to state a claim upon which relief can be granted; (4) Mr. Tivis' Eighth Amendment claim fails to establish that Defendants acted with deliberate indifference; and (5) Defendant Beecroft is entitled to qualified immunity.

Mr. Tivis named as Defendants Dr. Patty Beecroft, Ron Leyba, and "Mr. Joe Ortize [sic]" as Executive Director of the Colorado Department of Corrections. Mr. Tivis has not named Ted Laurance as a Defendant. (*See* Complaint (doc. # 3) at pp. 1-2 of 23). However, the court issued orders referring to Defendants Beecroft, Leyba, and Laurance. (*See, e.g.*, docs. # 5, # 10, and # 12). The waiver of service of summons was entered on behalf of Beecroft, Leyba, and Laurance. (*See* doc. # 13). Defendants Beecroft, Leyba, and Laurance filed the Motion to Dismiss. (*See* doc. # 15). On June 26, 2007, the court held a status conference to clarify the correct Defendants. The parties conceded that Ted Laurance is not a proper Defendant in this action. (*See* Minutes of June 26, 2007 status conference (doc. # 47)). Mr. Tivis conceded that Defendant Ortiz need not be served, as he has not stated a claim for relief against Ortiz. (*See id.*). The parties agreed that this civil action shall proceed against

2

Defendants Beecroft and Leyba only.  (*See id.*).

II.     Standard of Review

Defendants brought their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (*See* Defendants' Motion at p. 5).  To his Response filed on April 27, 2007, Mr. Tivis attached approximately 47 pages of documents as evidence.  (*See* doc. # 32). Because materials outside the pleadings were submitted, the court notified the parties on May 2, 2007 that it would treat Defendants' Motion as one for summary judgment under Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(b) (If, on a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ."); *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987) ("it was appropriate for the court . . . to convert the motion to a Rule 56 motion when extraneous evidence was submitted . . . ");  *Building and Const. Dept. v. Rockwell Intern. Corp.*, 7 F.3d 1487, 1496-97 (10th Cir. 1993) ("Rule 56(c) in turn requires that the opposing party be given ten days notice prior to hearing of the motion within which to file opposing affidavits.").

On May 15, 2007, Mr. Tivis filed his objection to the court's Order converting the Motion to Dismiss to one for summary judgment, arguing that "there are still issues that are still being addressed." (*See* doc. # 37 at p. 2).  To his objection, Mr. Tivis attached approximately 33 pages of "additional materials." (*See* doc. # 37 at pp. 3-35 of 35).  On June 20, 2007, Mr. Tivis filed a second objection to the court's decision to treat Defendants' Motion to Dismiss as a motion for summary judgment.  To his second objection, Mr. Tivis attached additional exhibits.  (*See* doc. # 46 at pp. 3-13 of 13).

At the status conference held on June 26, 2007, Mr. Tivis clarified that he does not object to the court's treatment of the Motion to Dismiss as one for summary

judgment.  Mr. Tivis requested that the court consider his objections as responses to

Defendants' Motion and that the court consider the additional materials he has

submitted.  (*See* docs. # 4, # 32, # 37, and # 46; Minutes of June 26, 2007 status

conference (doc. # 47)).  Mr. Tivis has submitted materials outside the pleadings, the

court has given the parties adequate notice, and the parties have agreed that the court

may properly treat Defendants' Motion to Dismiss as one for summary judgment under

Fed. R. Civ. P. 56.

> Summary judgment is proper under Fed.R.Civ.P. 56(c) when the
> pleadings, depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue as
> to any material fact and that the moving party is entitled to a judgment as
> a matter of law.  In applying the standard, the court reviews the pleadings
> and documentary evidence in the light most favorable to the non moving
> party. To defeat a properly supported motion for summary judgment, there
> must be evidence upon which the jury could reasonably find for the
> plaintiff. Judgment as a matter of law is improper unless the evidence and
> all inferences to be drawn therefrom are so clear that reasonable minds
> could not differ as to the conclusion. Speculation, supposition and
> unsupported factual allegations will not establish an issue of material fact
> necessitating trial.

*Lee v. Board of County Com'rs of Arapahoe County, Colo.*, 18 F. Supp.2d 1143, 1156

(D. Colo. 1998) (internal quotation marks and citations omitted) .

As the nonmovant responding to a summary judgment motion, Mr. Tivis is

required to identify specific facts, through affidavits, depositions, or exhibits, from which

a rational trier of fact could find in his favor.  *See Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 671 (10th Cir. 1998).  Although the court must "view the evidence and draw

all inferences in the light most favorable to the party opposing summary judgment, that

party 'must identify sufficient evidence which would require submission of the case to a

jury.' "  *Langley v. Adams County*, 987 F.2d 1473, 1476 (10th Cir. 1993) (quoting *Mares

v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992)).

Because Mr. Tivis' Complaint has been sworn to under penalty of perjury (*see*

Complaint at p. 23 of 23), the court may treat it as an affidavit.  *Green v. Branson*, 108

F.3d 1296, 1301 n. 1 (10th Cir. 1997).  *See also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).").  "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein."  *Conaway*, 853 F.2d at 792.

Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' "  *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).  "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory."  *Conaway*, 853 F.2d at 792-93.  An affidavit merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment.  *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884 (1990). The court must determine whether Mr. Tivis has met his burden of presenting specific facts to overcome Defendants' Motion.

III.   Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of

any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.      Failure to State Claim for Due Process Violation under Fourteenth Amendment

Mr. Tivis alleges that he is being denied necessary medical care in violation of his rights under the Eighth and Fourteenth Amendments. It is unclear whether Mr. Tivis invokes the Fourteenth Amendment because the Eighth Amendment applies to the states only through the Fourteenth Amendment or because he is attempting to allege a violation of his substantive due process rights. (*See* Complaint (doc. # 3) at p. 16 of 23 ("Denying and delaying this proscribed treatment violates the Eighth Amendment, which applies to the state through Due Process Clause of the Fourteenth Amendment.")). The Tenth Circuit Court of Appeals "previously noted that where constitutional protection is afforded under specific constitutional provisions, alleged violations of the protection should be analyzed under those provisions and not under the more generalized provisions of substantive due process." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (citation omitted). Further, while a claim made by a pretrial detainee for inadequate medical attention is recognized under the Fourteenth Amendment's due process clause, the same claim made by a convicted inmate such as Mr. Tivis is recognized under the Eighth Amendment test of deliberate indifference to serious medical needs. *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992) (citation omitted). Thus, the court will review Mr. Tivis' claim for denial of medical care

under the Eighth Amendment.  *See Riddle*, 83 F.3d at 1202.

B.      Liability of Defendants under § 1983 in their Official Capacities

Mr. Tivis brings his claims against Defendants in their capacities as employees of the State of Colorado pursuant 42 U.S.C. §1983.   (*See* Complaint (doc. # 3) at p. of 23).  Mr. Tivis does not specify whether he is suing Defendants in their individual capacities, their official capacities, or both.

To the extent that Mr. Tivis is suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the Colorado Department of Corrections ("CDOC").  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents");  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  States and state officials sued in their official capacities are not "persons" within the meaning of § 1983.  *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  Such entities cannot be sued for monetary damages arising from alleged conduct which deprives a plaintiff of his or her civil liberties.  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  As Mr. Tivis seeks only money damages, his claims against Defendants in their official capacities are properly dismissed with prejudice.

C.     Liability under § 1983 of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Tivis is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67.

1.     Failure to State Claim Against Defendant Leyba

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A plaintiff must allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).

Defendant Leyba argues that Mr. Tivis has failed to plead sufficient facts to demonstrate that he had any personal participation in or any supervisory liability for the

alleged violations of Mr. Tivis' constitutional rights.  The court agrees.  Other than

listing Leyba as a Defendant, Mr. Tivis makes no allegations in the Complaint

concerning any conduct by Leyba.  (*See* Complaint (doc. # 3)).  Mr. Tivis has not pled

that Leyba had any direct contact with him, that Leyba was present during any of the

conduct alleged, or that Leyba actually knew of and acquiesced in the alleged

violations.  Mr. Tivis has failed to allege any basis for holding Leyba individually liable

under §1983.  Defendant Leyba in his individual capacity is properly dismissed from

this civil action.


       2.     Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual

punishments." U.S. CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison

and the conditions under which he is confined are subject to scrutiny under the Eighth

Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Certain

conditions of confinement, if they inflict pain unnecessarily and wantonly, may

constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v.*

*Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, whether the

medical need of the prisoner is "serious," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992),

and a subjective component, whether the officials acted with a sufficiently culpable

state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  In order to assert an Eighth

Amendment claim that prison officials were deliberately indifferent to his medical

needs, a plaintiff must demonstrate that (1) he suffered objectively serious medical

needs and (2) that the prison officials actually knew of and deliberately disregarded

those needs.  *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (two-pronged

standard "requires deliberate indifference on the part of prison officials and it requires

the prisoner's medical needs to be serious"); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (same) (citation omitted).

It is undisputed that Mr. Tivis has been diagnosed with degenerative joint disease.  Mr. Tivis alleges that Dr. Beecroft has denied him necessary pain medication and delayed and denied necessary hip replacement surgery.  Although "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm," such harm may be shown by proof that "considerable pain" resulted from the delay.  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).  An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."  *Berry*, 900 F.2d at 1496.  The Supreme Court explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference.  We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  This approach comports best with the text of the Amendment as our cases have interpreted it.

*Farmer*, 511 U.S. at 837.

The evidence submitted by Mr. Tivis shows that he has suffered from pain in his

left hip for several years due to degenerative joint disease.  (*See, e.g.,* doc. # 4 at p. 17 of 28 ("chart indicates [hip problems] started about the year 2000;" doc. # 37 at p. 4 of 35 ("has had pain to his L hip for approximately 5 years")).  Mr. Tivis seeks hip replacement surgery.  Dr. Beecroft's opinion is that hip replacement surgery is not warranted at this time and that Mr. Tivis' pain may be managed conservatively with medication while she continues to monitor his condition.

On February 15, 2006, Mr. Tivis attended an outside consultation with Dr. Gary Go.  Dr. Go suggested oral medication and ambulatory aids.  Mr. Tivis rejected Dr. Go's suggestion of injections and indicated that "he would like to have a hip replacement." (*See* doc. # 37 at p. 4 of 35).  Dr. Go submitted a request for approval for total joint surgery.  (*See id.*).  The Colorado Department of Corrections' Utilization Committee denied the request because conservative therapy had not been tried.  (*See, e.g.,* doc. # 4 at pp. 18, 19 of 28; doc. # 37 at p. 3 of 35).

The evidence demonstrates that there is a legitimate disagreement as to when hip replacement surgery should take place.  As Mr. Tivis was 45 years old in 2006 and artificial hips last only ten to twelve years, several medical providers have suggested that the surgery be postponed as long as possible to minimize the need to repeat the surgery when Mr. Tivis is older.  (*See, e.g.,* doc. # 37 at p. 4 of 35 ("he takes the risk that he is this young and he may need maybe a second or third revision"); doc. # 4 at p. 6 of 28 ("patient is too young to have hip replaced");  doc. # 4 at p. 13 of 28 ("too young for surgery");  doc. # 4 at p. 15 of 28 ("Dr. Patterson does not want to do hip replacement due to his age"); doc. # 4 at p. 16 of 28 ("I told him that he is young for a hip replacement at 44 because they last 5-10 or so years"); *see also* doc. # 46 at p. 8 of 13 ("Dr. Neufeld stated in his affidavit that joint replacement surgery is normally not done on someone who is in their mid to late 40's.")).

Mr. Tivis argues that he has been denied treatment for the pain caused by his

degenerative joint disease.  (*See, e.g.,* Mr. Tivis' Response (doc. # 32) at p. 9 of 14 ("medical care so cursory that it amounted to no treatment at all")).  The records submitted by Mr. Tivis demonstrate that Dr. Beecroft has responded to his complaints by providing him with treatment.  In response to his complaints of pain, Mr. Tivis has been prescribed several medications over the past several years.  (*See, e.g.*, doc. # 4 at pp. 5, 7, 10-13, 15 of 28).  Mr. Tivis has reported that Tylenol 3 has helped his pain. (*See* doc. # 4 at pp. 8, 10, 17 of 28).  He has also reported that Nubain "helped him a lot" (*see* doc. # 4 at pp. 8, 14, 17 of 28) and that "Baclofen eas[ed the pain] somewhat." (*See* doc. # 4 at p. 5 of 28).  Mr. Tivis has complained that his narcotic medication was discontinued, yet has stated that the narcotic given to him did not alleviate his pain. (*See, e.g.*, doc. # 4 at pp. 13, 17 of 28).  Mr. Tivis' narcotic medication was discontinued because it was not appropriate and other medications were more appropriate for long term pain control.  (*See* doc. # 4 at pp. 4, 21 of 28).

On November 15, 2006, Mr. Tivis attended an outside consultation with Dr. Russell DeGroote.  (*See* doc. # 32-2 at p. 14 of 47; doc. # 37 at p. 4 of 35).  Dr. DeGroote noted that Mr. Tivis has "mild" degenerative joint disease in his left hip.  (*See* doc. # 37 at p. 4 of 35).  Dr. DeGroote performed an injection procedure "that should give him several months of pain relief."  (*See* doc. # 37 at p. 4 of 35).  Dr. DeGroote recommended to "continue symptomatic treatment."  (*See* doc. # 37 at p. 4 of 35).

Mr. Tivis' complaints of the severity of his pain are not entirely consistent with the evidence in the record.  Mr. Tivis has reported that "he usually feels ok except" when "cold weather with rain," a "change in weather," and weather "front[s]" come in. (*See*, *e.g.*, doc. # 4 at pp. 6, 14-16 of 28; *see also* doc. # 32-2 at pp. 27, 35, 43 of 47). Mr. Tivis has been observed "moving easily" and "freely."  (*See* doc. # 4 at pp. 4, 16, 19 of 28).  He has reported walking "the yard for an hour or so" (*see* doc. # 4 at p. 16 of 28) and has worked "in welding" at the prison, where he is "on his feet all day" and

"does heavy lifting." (*See* doc. # 4 at pp. 9, 20 of 28).

While Mr. Tivis continues to complain of pain, which in essence amounts to a complaint that the treatment provided him has been ineffective, the court notes that Mr. Tivis' condition is chronic in nature.  There is no evidence of medical urgency for a surgical hip replacement.  There is simply no showing that the course of treatment followed by Dr. Beecroft, including deferral of hip replacement surgery and pain management through medications, so deviates from the standard of care as to reflect deliberate indifference.  *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (plaintiff entitled to prove his case by establishing that doctor's "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual punishment.").

Even if Mr. Tivis had set forth evidence demonstrating that another physician would have attempted to treat him with alternate medications or would have considered some type of surgical procedure earlier, this would not serve to create a triable issue on his Eighth Amendment claim.  *See Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (Plaintiff "has only shown . . . that another physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference.").  Mr. Tivis' disagreement with the treatment of his degenerative joint disease is insufficient to sustain a claim under the Eighth Amendment.  *See Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs"); *Dulany*, 132 F.3d at 1240 (8th Cir. 1997) (In light of evidence that treatment was provided and was adequate, plaintiff cannot create a triable issue of fact by responding that he feels more should have been done); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of

opinion does not support a claim of cruel and unusual punishment"); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (the Constitution does not guarantee a prisoner the treatment of his choice) (citations omitted); *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation); *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) ("The prisoner's right is to medical care -- not to the type or scope of medical care which he personally desires") (internal quotation marks and citation omitted).

The question of whether a certain form of treatment should be prescribed "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. The denial of specific pain medications and hip replacement surgery that Mr. Tivis alleges here does not constitute deliberate indifference on the part of Defendants. *See Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993) ("The record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind, *i.e.*, a deliberate indifference . . . to . . . medical conditions."). Defendants Leyba and Beecroft are entitled to summary judgment on Mr. Tivis' claim for violation of the Eighth Amendment. *See Martinez v. Mafchir*, 35 F.3d 1486, 1491 (10th Cir. 1994) (as the court finds no underlying Eighth Amendment violation, Defendant Leyba can have no supervisory liability) (citation omitted).

3.     Qualified Immunity

Defendant Beecroft raises the defense of qualified immunity. Whether Defendant Beecroft is entitled to qualified immunity is a legal question. *Wilder v. Turner*, — F.3d —, —, 2007 WL 1677951 (10th Cir. (Colo.) June 12, 2007).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold

> question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right? If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.

*Wilder v. Turner*, 2007 WL 1677951 at * 3 (internal quotation marks and citations omitted).  *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted); *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999) (court "must first determine 'whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right' . . . If the plaintiff has asserted such a deprivation, *only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

Having concluded above that Mr. Tivis has failed to establish a violation of the Eighth Amendment, the court need proceed no further on the qualified immunity issue. *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1278 (10th Cir. 2003) (court "need not reach the question of whether the individual defendants are entitled to qualified immunity if [it] determine[s]. . . , that plaintiffs failed to sufficiently allege the violation of a constitutional right").

D.      Equal Protection

Mr. Tivis alleges that Defendants' failure to provide necessary pain medication and hip replacement surgery violated his right to equal protection under the Fourteenth Amendment.  (*See* Complaint at pp. 13-15 of 23).

"The Equal Protection Clause of the Fourteenth Amendment commands that no

15

State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The challenged disparate treatment must be the result of purposeful discrimination. *Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671 n. 26 (1980). To properly allege an equal protection claim, Mr. Tivis must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause.

Mr. Tivis has alleged that "Defendants treated him differently than other similarly situated prisoners." (Complaint (doc. # 3) at p. 13 of 23). Mr. Tivis states that his "Equal Protection Claim is clearly supported by the exhibits (letters, grievances, and medical records), in which Defendants clearly admit they are treating Plaintiff differently than other similarly situated individuals." (Complaint (doc. # 3) at p. 15 of 23).

There is no evidence before the court of any similarly situated persons or what treatment they received. The "letters, grievances, and medical records" cited by Mr. Tivis contain only his self-serving conclusory allegations that he received different treatment than unspecified other inmates. (*See, e.g.*, doc. # 32-2 at pp. 23, 45 of 47; doc. # 37 at pp. 24, 29, 30, 32, 33 of 35). Mr. Tivis has presented no evidence that his condition was similar to any other inmate or that any other inmate received more favorable treatment. Mr. Tivis provides no information about any other inmates or their medical conditions. "Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir.

1994).  *See also Samaad v. City of Dallas*, 940 F.2d 925, 941 (5th Cir. 1991) (holding that black residents failed to state an equal protection claim where they did not allege the existence of a similarly situated group of white residents who were treated differently).  Mr. Tivis has not provided evidence that he was irrationally or arbitrarily treated differently from similarly situated inmates.

Nor has Mr. Tivis presented any evidence that Defendants acted based upon a discriminatory intent or motive.  *See Watson v. City of Kansas City, Kansas*, 857 F.2d 690, 694 (10th Cir. 1996) ("A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent") (citations omitted);  *Villanueva v. Carere*, 85 F.3d, 481, 485 (10th Cir. 1996) (Although "[t]he discriminatory purpose need not be the only purpose, . . . it must be a motivating factor in the decision").  Mr. Tivis again presents only his conclusory allegations that Dr. Beecroft acted with discriminatory intent.  (*See* doc. # 32-2 at pp. 22, 23, 31, 33 of 47;  doc. # 37 at pp. 20, 22 of 35).

Mr. Tivis fails to establish an equal protection claim sufficient to survive disposition by summary judgment.

Accordingly, IT IS RECOMMENDED that:

1.      Ted Laurance be removed from the caption, as he is not a party in this civil action.

2.      Defendant Joe Ortiz be dismissed from this civil action by agreement of the parties.

3.      The Motion to Dismiss filed on behalf of Defendants Beecroft and Leyba (filed January 18, 2007) (doc. # 15), treated by the court as a motion for summary judgment, be GRANTED and that judgment on the Complaint enter in favor of Defendants Beecroft and Leyba and against Plaintiff.

4.      Each party shall bear his, her or its own costs.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to

18

preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of July, 2007.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge